*437 OPINION OF THE COURT
Bellacosa, J.
 Defendants challenge their convictions principally on the ground that the Director of the New York State Organized Crime Task Force (OCTF) lacks authority to be an applicant for eavesdropping warrants. They premise this argument on the assertion that the State statute (CPL 700.05 [5]), which expressly includes the Director of OCTF as a law enforcement officer authorized to apply for warrants, is inconsistent with and violative of its Federal enabling antecedent (18 USC § 2516 [2]). We conclude that there is no infirmity in the New York State statute or in its utilization to secure the challenged warrants obtained by OCTF’s Director in accordance with the valid State statute and procedures. We are also satisfied that the sealing requirements of CPL 700.50 (2) have been met on this record, and we therefore affirm the orders of the Appellate Division which had affirmed defendants’ convictions.
The most serious charges of which defendants were convicted were coercion and conspiracy. This culminated a lengthy and complex investigation by the OCTF into organized crime infiltration of the refuse-carting industry in Nassau and Suffolk Counties. A targeted victim of the criminal enterprise —a legitimate businessman — gave information in 1982 to the OCTF which triggered the specific investigation. Over the course of 13 months in 1982 and 1983, the OCTF uncovered the pervasive tentacles of organized crime in Long Island’s carting industry, networked by a conspiracy of bribery and *438 violent activities. Indictments ensued and all but one of the defendants pleaded guilty to the charges against them. Defendant Finnerty went to trial and was also convicted.
The OCTF’s primary investigatory and evidence-gathering weapon was eavesdropping. Seven warrants were issued over the course of the probe. The OCTF Director applied for these eavesdropping warrants pursuant to CPL 700.05 (5), which provides: " 'Applicant’ [for an eavesdropping warrant] means a district attorney or the attorney general or if authorized by the attorney general, the deputy attorney general in charge of the organized crime task force” (emphasis added). Defendants contend CPL 700.05 (5) is invalid because the Federal statute does not allow this State criminal law official to be included among the few authorized applicants. Therefore, they urge the evidence, otherwise legally obtained with the warrants, was illegally obtained and should have been suppressed.
Title III of the Omnibus Crime Control and Safe Streets Act of 1968 "impose[s] upon the States the mjnimum constitutional criteria for electronic surveillance” (People v Shapiro, 50 NY2d 747, 762-763 [citations omitted.]; 18 USC §2510 et seq.). While a State may enact legislation more restrictive than the baseline protections allowed by this act, "any State law drawn more broadly * * * runs afoul of the supremacy clause (US Const, art VI, cl 2)” (People v Shapiro, supra, at 763 [citation omitted]). Title III limits those who may be applicants for court-authorized eavesdropping warrants to "[t]he principal prosecuting attorney of any State, or the principal prosecuting attorney of any subdivision thereof, if such attorney is authorized by a statute of that State” (18 USC § 2516 [2]). Defendants contend that the CPL 700.05 (5) authorization of "the deputy attorney general in charge of the organized crime task force” impermissibly broadens the literal letter and the overarching purpose of that threshold part of title III. We disagree.
Defendants argue that conferring applicant status for securing court-ordered eavesdropping warrants on this sole specialized statutory Deputy Attorney-General violates the Federal statute because it uses the definitive article "the” in qualifying a "principal prosecuting attorney”. Yet Congress was writing a generic enabling statute to cover the 50 widely varying official titles and chains of command in all the State jurisdictions. Also, countervailing congressional words and action elsewhere in the comprehensive Federal act and its *439 legislative history support our rejection of this cramped construction: "State legislation enacted in conformity with this chapter should specifically designate the principal prosecuting attorneys empowered to authorize interceptions” (Sen Rep No. 1097, 90th Cong, 2d Sess, 1968, reprinted in 1968 US Code Cong & Admin News 2112, 2189 [hereinafter Senate Report] [emphasis added]). The multiplicity, albeit high-level, of permissible applicants intended by Congress is additionally manifested by 18 USC § 2516 (1), which lists six separate Federal prosecuting attorneys authorized to apply for eavesdropping warrants. Indeed, the statute enacted by Congress for the "State” (for title III purposes) of the District of Columbia permits the United States Attorney to "authorize * * * any investigative or law enforcement officer” to be an applicant (DC Code Annot § 23-546 [a]; see, Note, Significant Development, Electronic Surveillance — State Authorization of Wiretaps Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 56 BU L Rev 600, 606). We are further aided in our inquiry by this congressional admonition: "The important question [in determining valid applicants], however, is not name but function.” (Senate Report, at 2187). Congress, we therefore conclude, did not intend the straitjacketed implementation of this important legislation urged upon us by defendants-appellants and the dissenting opinion. Congress instead reflected a more realistic and flexible, though limited, high-level roster of applicants (see also, United States v Smith, 726 F2d 852, 857-858).
An overall goal of title III is "delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized” (Senate Report, at 2153). To this end, the specific mandate of 18 USC § 2516 (2) "provide[s] for the centralization of policy relating to statewide law enforcement in the area of the use of electronic surveillance in the chief prosecuting officer of the State” (Senate Report, at 2187). The essential question is whether the OCTF Director is precluded from qualifying as the "principal prosecuting attorney” within the language and meaning of 18 USC § 2516 (2). An examination of the purpose and function of the New York State OCTF and its Director’s responsibilities supports the view that this officer should not be written out of the New York State authorization statute, as that would ironically contradict the centralization objective of the Federal statute.
The proliferation-of-authorized-applicants hypothesis ad *440 vanced by the dissent may be readily dispelled. In 1970, the New York State Legislature established a State-wide Organized Crime Task Force (Executive Law § 70-a). The stated reason for the creation of the OCTF is remarkably consonant with that underlying the enactment and the limitations of the Omnibus Crime Control and Safe Streets Act of 1968 (18 USC § 2516 [2]): to insure centralization and consistency in law enforcement against organized crime (see, Legislative Findings, L 1970, ch 1003, § 1 [3], [4]). The consolidation intent embodied in the State’s OCTF statute is further evidenced by the provision for the appointment of one special Deputy Attorney-General to the leadership responsibility for this whole field of endeavor. This officer, appointed by and serving at the pleasure of the Governor and Attorney-General (Executive Law § 70-a [2]), is thus publicly accountable generally and to them specifically as the State’s chief executive and highest elected law enforcement official. I can find no New York legislative trend creating State-wide special prosecutors enjoying the dual specific legislative mandate that the Director of the OCTF has (see, Executive Law § 70-a [2]; CPL 700.05 [5]). Indeed, the Governor’s formal Budget Message for 1990-1991 specifies an opposite trend: elimination of the Special Prosecutor for Corruption, in existence since 1972 (State Budget, at 103).
Another defense prong of attack is that a lack of "political accountability” should deprive the OCTF Director of eavesdrop warrant applicant status. Congress did express an intent that applicants "be limited to those responsive to the political process” (United States v Giordano, 416 US 505, 520). However, the purpose of this requirement is to ensure that "[sjhould abuses occur, the lines of responsibility lead to an identifiable person” (Senate Report, at 2185). The legislative scheme of New York’s Executive Law § 70-a, plus the requirement of authorization running to the Director from the regularly elected Attorney-General (CPL 700.05 [5]), have embodied in State law a sufficient assurance in this respect. Moreover, the Federal applicants enumerated in the Federal prosecutorial roster have no more political accountability than New York State’s OCTF Director (see, 18 USC §2516 [1] [which includes "any Deputy Assistant Attorney General in the Criminal Division specially designated by the Attorney General” among authorized applicants]).
Some defendants also complain that the OCTF Director’s eavesdrop warrant application authority is derived from an *441 "overbroad delegation” of the Attorney-General’s power. But the Director’s general authority is not "derived”; rather, it is separately secured through a State legislative grant (see, Executive Law § 70-a), as is the independent warrant application power (see, CPL 700.05 [5]; see also, Matter of B. T. Prods. v Barr, 44 NY2d 226, 232, n 1; Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 230). The non-self-executing statutory status even requires a confirmatory express authorization from the Attorney-General, which was satisfied here by a letter from the Attorney-General to the Director. The designation and delegation is therefore not an abdication of responsibility, as has been argued, but a reinforced, checked and balanced, statutory and official conferral of appropriate authority. This is especially so under New York’s unconventional scheme where the Attorney-General is not traditionally or by statutory empowerment a general prosecuting official — which should be a sufficient answer to the dissent’s duplicativeness argument (Della Pietra v State of New York, 71 NY2d 792, 796-797).
The State and Federal statutes are specific and in harmony, and we therefore hold the New York applicant authorization statute valid. Our analysis in this respect is neither broadbrushed nor strained but quite straightforward. It is also buttressed by the failure of defendants to fulfill their burden of demonstrating the invalidity of CPL 700.05 (5) beyond a reasonable doubt (see, People v Pagnotta, 25 NY2d 333, 337). In sum, we uphold the invocation by the OCTF Director of his plain authority vested in that office under the State statute to secure the pertinent eavesdrop warrants; we find that statute consistent with the congressional enabling statute and intent; and we decide in consequence of those threshold determinations that the evidence garnered pursuant to court-ordered warrants was properly held admissible and not suppressible.
Defendants additionally claim, however, that the eavesdrop tapes and all other evidence derived from them should have been suppressed because of alleged noncompliance with the immediate sealing requirements of CPL 700.50 (2). In 6 of the 24 warrant expiration periods, tapes were not sealed "immediately”. On 5 of these 6 occasions, the period expired at midnight on a Saturday night and, in preexpiration meetings, the issuing Justice directed that the tapes be presented for sealing on the first business day after expiration. In the sixth instance, the prosecutor immediately presented the tapes for *442 sealing but was informed by court officials of the issuing Justice’s unavailability at that particular moment. The prosecutor complied with the issuing Justice’s direction to return the next day and the tapes were then sealed.
While we relax none of the burdens initially placed on the People to explain a tape-sealing delay (People v Winograd, 68 NY2d 383, 394), we conclude on this record that the offered explanations satisfied that burden (see, People v Edelstein, 54 NY2d 306, 310). Both lower courts have so held, and we have no basis to conclude as a matter of law that the sealing requirement aspect of the statute was violated. People v Winograd (supra) offers little sanctuary to defendants because there the prosecutor knew in advance of the issuing Justice’s impending absence on the expiration date and the prosecutor made no alternative sealing arrangements in an effort to comply with the immediate sealing protection. Here, by contrast, the prosecutor in each instance made alternative arrangements in advance with court approval and directions, and sealing was accomplished "immediately” within the intendment of the statutory mandate. To rule otherwise would sacrifice substance for form and not advance the salutary and necessary purposes of the sealing protections in this statute (People v Ronning, 137 AD2d 43, 48-49, lv denied 72 NY2d 866).
The dissent’s disagreement with us on this point is particularly unavailing in view of the respect, not superseder, given People v Edelstein (supra) in People v Winograd (supra, at 394-395), which neatly and supportively harmonizes our recent relevant precedents.
Since the arguments raised do not render the affirmed judgments of conviction infirm in any cognizable respect, the orders of the Appellate Division should be affirmed.