UNITED STATES of America, Plaintiff,

v.

PRIVATE SANITATION INDUSTRY AS-SOCIATION OF NASSAU/SUFFOLK, INC., et al., Defendants.

No. CV–89–1848.

United States District Court,
E.D. New York.

Dec. 30, 1992.

Mary Jo White, U.S. Atty., E.D.N.Y. (Joseph D. McCann, Paul Weinstein, Jody Kasten, Asst. U.S. Attys., of counsel), Brooklyn, NY, for plaintiff.

Brian D. Linder, Gallop, Dawson, Clayman & Rosenberg, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff United States moves for partial summary judgment providing for broad injunctive relief against defendant Salvatore Avellino. Defendant Avellino requests a continuance to conduct discovery pursuant to Fed.R.Civ.P. 56(f) and, alternatively, opposes the government's motion. For the reasons stated below, Avellino's request for a continuance is denied and the government's motion is granted.

## FACTS

The United States brought this civil action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") against 112 defendants, alleging that they engaged in a pattern of racketeering activity by committing illegal acts and by using force and threatening to use force against other individuals engaged in the collection of solid waste on Long Island. The underlying facts and the identities of the various defendants are set out in *United States v. Private Sanitation Indus. Ass'n,* 793 F.Supp. 1114, 1121–23 (E.D.N.Y.1992), familiarity with which is assumed.

For purposes of this motion, the relevant facts are as follows. Salvatore Avellino ("Avellino") is a principal and/or hidden owner in two corporate co-defendants in this action: Salem Carting Company ("Salem") and SCC Holding Corp. Decl. of Donald McCormick in Supp. of Pl's Mot. for Partial Summ.J. at ¶ 43 ("McCormick Decl."). Avellino is also a reputed caporegime in the Lucchese crime family. In that capacity, Avellino is reputed to be in charge of controlling trade waste collection on Long Island. It is alleged that he collects extortion payments and tribute from numerous businesses to be divided between the Lucchese and Gambino crime families. The Gambino family receives an equal share of those illegal proceeds because it controls the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Private Sanitation Local 813 ("Local 813")—the union that represents workers employed by companies engaged in the solid waste industry on Long Island. To control that industry, Avellino allegedly uses, and threatens to use, force against rebel carters who vie for business in the competitive free market; persuades potential competitors not to bid on certain jobs; and bribes public and union officials to ensure continued control of the waste collection industry.

Avellino has been involved in many judicial proceedings concerning these activities. In 1985, the State of New York commenced a civil antitrust action against Avellino and others on behalf of itself and various local government and, as *parens patriae*, on behalf of all citizens who paid for rubbish removal on Long Island. *State of New York v. Salem Sanitary Carting Corp.*, CV–85–0208 (E.D.N.Y.1985) (Glasser, J.). In December 1991, Avellino agreed to pay compensatory damages to the represented class in the amount of $231,000; on April 24, 1992, this Court approved a final settlement in that case, enjoining Avellino from entering into or enforcing any conspiracy in restraint of trade for the sale of private garbage collection services, granting New York State access for five years to inspect certain contracts, and permitting state investigators to inspect Salem's corporate records, to conduct interviews, and to propound interrogatories. Aff. of Brian Linder in Supp. of Def. Avellino's Mot. to Stay, dated September 17, 1992, at ¶¶ 6–7.

Similarly, in 1984 Avellino was charged in separate indictments by state grand juries in Suffolk County, *inter alia*, for coercing, for conspiring, and for violating New York State antitrust laws[1] and for conspiring to bribe three Town of Huntington, Long Island, officials to receive favorable rate increases for private haulers of solid waste. On October 17, 1986, Avellino pleaded guilty to coercion in the first degree in violation of New York Penal Law § 135.65(1) (McKinney 1987), a class D felony. Transcript of October 17, 1986 plea allocution in New York State County Court, Suffolk County ("Plea Tr.") at 7–8, 14–15 (Exh. 8 to McCormick Decl.). In pleading guilty, Avellino stated:

> Between on or about December 1981 and October 1983, in the County of Suffolk, I, Salvatore Avellino, intentionally and knowingly violated the law by inducing Robert Kubecka and Jerome Kubecka from refraining from bidding for and soliciting certain carting customers by ins-

tilling in the Kubeckas' a fear that I would damage the Kubeckas' property. McCormick Decl. at ¶¶ 58; Plea Tr. at 15.

At that time, Avellino also pleaded guilty to conspiracy in the fifth degree in violation of New York Penal Law § 105.05 (McKinney 1987), a class A misdemeanor, by conspiring with others to commit the felony of second degree bribery. McCormick Decl. at ¶ 73; Plea Tr. at 7–8, 17–19. To receive rate increases for residential carters in the Town of Huntington, Long Island, it is alleged that Avellino and his co-conspirators bribed Arthur Romersa and Vito Biondi of the Town's Department of Environmental Control with $12,000 in political contributions to be paid in installments and $800 worth of postage stamps to be used by the Democratic party. McCormick Decl. at ¶ 66. On April 1, 1983, James Corrigan, the Executive Director of PSIA, notified Avellino that PSIA would pay $800 for postage stamps in exchange for the political votes of three Democratic members of the Huntington Town Board as arranged by Romersa and Biondi. McCormick Decl. at ¶¶ 67, 72. On April 6, 1983, PSIA issued an $800 check for the postage stamps. McCormick Decl. at ¶ 68. At the plea allocution, Avellino stated:

> Between on or about August, 1982 through on or about December, 1983, in the County of Suffolk, I, Salvatore Avellino, with the intent that conduct constituting bribery in the second degree be performed, ... agreed to confer a benefit, to wit: Political contributions upon Anthony [sic] Romersa and Vito Biondi, public servants, upon the understanding that their vote, opinion and action would be influenced as public servants.

McCormick Decl. at ¶ 73; Plea Tr. at 18.

The government now moves for partial summary judgment against Avellino contending that there are no genuine factual issues in dispute to preclude granting that motion as a matter of law because all the requisite elements of civil RICO liability

---

1. Salem was also charged in the first indictment for violating New York antitrust laws; Salem pleaded guilty to attempted coercion in the second degree on the indictment. Transcript of October 17, 1986 plea allocution in New York State County Court, Suffolk County at 7–8, 16–17 (Exh. 8 to McCormick Decl.).

have been established by Avellino's guilty pleas, through the testimony of various government informants in other proceedings, and through transcripts of intercepted communications involving Avellino and others. In addition, the government seeks injunctive relief and disgorgement of profits against Avellino.

Defendant Avellino originally cross-moved for a stay of this civil proceeding while two grand jury investigations in the Eastern District of New York were pending. On October 20, 1992, this Court denied that motion, and granted Avellino twenty days to respond to the government's motion for partial summary judgment, 811 F.Supp. 802. In opposing the government's motion, Avellino contends that it be denied because: (1) there are genuine issues of material fact as to the elements of civil RICO liability; (2) the motion is supported by inadmissible evidence; (3) he requires additional discovery to oppose the motion in accordance with Fed.R.Civ.P. 56(f); and (4) the broad injunctive relief sought by the government impermissibly infringes on his constitutional right of association.

## DISCUSSION

■ Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing a properly supported summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a *genuine issue* for trial." Fed.R.Civ.P. 56(e) (emphasis supplied). The non-movant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

■ In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co., Inc. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the non-movant such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, "the mere existence of factual issues [pertaining to immaterial facts] will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985). Because Avellino has failed to show that a genuine issue of material fact exists as to his civil RICO liability, and because his other arguments are not persuasive, partial summary judgment against Avellino is appropriate.

The government has submitted a statement pursuant to Local Rule 3(g) consisting of 58 paragraphs of facts which it claims are not in dispute. Avellino submitted a 3(g) counterstatement in which he states that only five facts are not in dispute, namely: that this is a civil RICO action, that he was indicted by two Suffolk County grand juries, and that he pleaded guilty to the crimes of coercion in the first degree and conspiracy in the fifth degree, Def['s] Response to Pl's 3(g) Statement at ¶ 1, but summarily opposes all other facts in the government's 3(g) statement. Avellino then proceeds to support his argument for a continuance pursuant to Fed.R.Civ.P. 56(f) until he has had the opportunity to conduct discovery. *Id.* at ¶¶ 3–4.

■ The insufficiency of Avellino's response is attributed to his assertion of his privilege against self-incrimination. Although an adverse inference may be drawn in a civil RICO proceeding against a defendant who invokes the privilege, *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976), liability should not be imposed based solely upon the adverse inference. *United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 683 F.Supp. 1411, 1452 (E.D.N.Y.1988) (citations omitted), *aff'd,* 879 F.2d 20 (2d Cir.1989). In that circumstance, the government must produce "in-

dependent corroborative evidence of the matters to be inferred" before liability will be imposed. *Id.* A careful review of the government's submissions in support of its motion compels the conclusion that such evidence has been produced and that granting the relief the government seeks is bottomed upon predicates much weightier than the facts in the government's 3(g) statement which the defendant is deemed to admit.

### 1. *Civil RICO Liability*

■ To state a cause of action under RICO, 18 U.S.C. § 1962(a)–(c), a plaintiff must show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Each of these elements is satisfied in this case.

■ First, Avellino's guilty pleas in the state court to coercion in the first degree and to conspiracy in the fifth degree conclusively establish that he committed two predicate racketeering acts. Section 1961 of Title 18 defines "racketeering activity" as:

> (A) any act or threat involving ... bribery ... which is chargeable under State law and punishable by imprisonment for more than one year; [and] (B) any act which is indictable under ... Title 18, United States Code ... section 1951 [Hobbs Act] (relating to interference with commerce, robbery, or extortion)....

18 U.S.C. § 1961(1).

■ As a preliminary matter, Avellino contests the preclusive effect of a guilty plea in a state court in a subsequent civil RICO proceeding brought in a federal court. It is well settled, however, that a state court judgment has collateral estoppel effect in a subsequent federal proceeding to the same extent that it would have in a subsequent state action under state law. *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (citing 28 U.S.C. § 1738). Collateral estoppel precludes a litigant in federal court from relitigating all legal and factual issues conclusively and necessarily determined in an earlier state court action. *Collard v. Incorporated Village of Flower Hill*, 604 F.Supp. 1318, 1322 (E.D.N.Y.1984), *aff'd*, 759 F.2d 205 (2d Cir.), *cert. denied*, 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). As the court has recently stated:

> The doctrine of collateral estoppel, or issue preclusion, bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992) (citing cases); *S.T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300, 304, 344 N.Y.S.2d 938, 941, 298 N.E.2d 105, 107 (1973) (quoting *Schwartz v. Public Adm'r of Bronx County*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969)). A guilty plea is accorded the same preclusive effect in a subsequent civil proceeding as is a conviction after trial, which conclusively establishes the underlying facts in a subsequent action. *S.T. Grand*, 32 N.Y.2d at 304–05, 344 N.Y.S.2d at 941–42, 298 N.E.2d at 107–08; *Gerney v. Tishman Constr. Corp.*, 136 Misc.2d 1051, 1053, 518 N.Y.S.2d 564, 567 (Sup.Ct. N.Y.Co.1987) (citing *Merchants Mut. Ins. Co. v. Arzillo*, 98 A.D.2d 495, 504, 472 N.Y.S.2d 97, 103 (2d Dep't 1984) (collecting cases)). The doctrine of collateral estoppel is thus clearly applicable in this action based on Avellino's guilty pleas in the state court.

■ Avellino also contends that his plea of guilty to coercion in the first degree is not entitled to preclusive effect here ·because he did not have a full and fair opportunity to litigate the underlying facts.

That plea, he asserts, was a "compromise," relying for support upon *Gilberg v. Barbieri,* 53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 51, 423 N.E.2d 807, 809 (1981). The facts in *Gilberg* are clearly distinguishable from and bear no relationship to the facts leading up to Avellino's plea of guilty to coercion in the first degree. The prior proceeding in which the defendant in *Gilberg* pleaded guilty was a petty offense, and not a crime as that term is defined in the N.Y.Penal Law § 10.00[6] (McKinney 1987), and the prior guilty plea was denied preclusive effect on that basis. *Gilberg,* 53 N.Y.2d at 293–94, 441 N.Y.S.2d at 51–52, 423 N.E.2d at 809–10. More relevant are *Merchants Mut. Ins. Co. v. Arzillo,* 98 A.D.2d 495, 472 N.Y.S.2d 97 (2d Dep't 1984), and *Gerney v. Tishman Constr. Corp.,* 136 Misc.2d 1051, 518 N.Y.S.2d 564 (Sup.Ct.N.Y.Co.1987), which held that a defendant who knowingly and voluntarily enters a guilty plea has had a "full and fair opportunity" to litigate the facts underlying his conviction because he "has chosen not to 'avail himself of the opportunity to contest th[ose] facts' [and] must accept the consequences of his action." *Gerney,* 136 Misc.2d at 1053–54, 518 N.Y.S.2d at 567 (quoting *Merchants Mut.,* 98 A.D.2d at

506, 472 N.Y.S.2d at 104).[2] The acknowledgement of guilt by Avellino to coercion in the first degree precludes his controverting a violation of the Hobbs Act, 18 U.S.C. § 1951, a predicate offense under 18 U.S.C. § 1961(1)(A).

Avellino also pleaded guilty to the misdemeanor of conspiring with others to commit the felony of Second Degree Bribery. The government contends that the facts underlying that conviction ultimately yield the predicate act of one or more felonies under the New York Penal Law: § 200.00 (second degree bribery)[3]; § 20.00 (aiding and abetting)[4]; § 110.05(6) (attempt)[5]; and § 200.20 (rewarding official misconduct in the second degree).[6] A violation of any of those sections constitutes a predicate act of "bribery" under 18 U.S.C. § 1961(1)(A). *Private Sanitation,* 793 F.Supp. at 1135–36, 1138. In this case, since Avellino's guilty plea conclusively establishes his involvement with and intent to bribe Romersa and Biondi, and his knowledge that PSIA would pay $800 for postage stamps for a mass mailing of the Democratic Party, the predicate act of "bribery" is established.

Avellino contends, however, that his guilty plea to the conspiracy charge does

---

2. Avellino also argues that the government fails to show that his actions affected interstate commerce. Def['s] Memo. of Law in Opp'n to Pl's Mot. for Summ.J. at 6–7. However, the government has demonstrated that the carting companies affected by Avellino's threats use garbage trucks that are manufactured out-of-state. Supplemental Decl. of Donald W. McCormick, dated November 25, 1992, at ¶¶ 3–4. Thus, the government has shown a sufficient nexus with interstate commerce.

3. In 1986, the New York Legislature substituted third degree for references to second degree in § 200.20, effective November 1, 1986, but made no substantive changes to that section. For the sake of convenience, this Court will refer to the statutory degree in effect when Avellino pleaded guilty.

Section 200.00 of the Penal Law currently provides:

A person is guilty of bribery in the third degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.
Bribery in the third degree is a class D felony.

N.Y.Penal Law § 200.00 (McKinney 1988).

4. Section 20.00 of the Penal Law provides:

When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.
N.Y.Penal Law § 20.00 (McKinney 1987).

5. Section 110.05(6) of the Penal Law provides:

An attempt to commit a crime is a ... 6. Class E felony when the crime attempted is a Class D felony.
N.Y.Penal Law § 110.05(6) (McKinney 1987).

6. Section 200.20 of the Penal Law provides:

A person is guilty of rewarding official misconduct in the second degree when he knowingly confers, or offers or agrees to confer, any benefit upon a public servant for having violated his duty as a public servant.
Rewarding official misconduct in the second degree is a class E felony.
N.Y.Penal Law § 200.20 (McKinney 1988).

not establish facts necessary for a conviction under §§ 200.00, 20.00, or 110.05(6) of the N.Y.Penal Law. He asserts that he could not be liable under those sections where he learned of the bribe after the officials had cast their tainted votes. Def's Mem. of Law at 7–9. His position lacks merit for the reason that his conduct would create liability under N.Y.Penal Law § 200.20, which makes it a class E felony to reward past official misconduct. Thus, Avellino's guilty pleas conclusively establish that he committed at least two prerequisite predicate acts necessary for RICO liability.

■ Finally, there is no genuine issue of material fact pertaining to the other elements of liability under RICO. Avellino argues that the government has failed to show that the aforementioned predicate racketeering acts constitute a pattern of racketeering activity. Def's Mem. of Law at 9–10.[7] "[T]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose the threat of continued criminal activity." *Private Sanitation*, 793 F.Supp. at 1139 (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989)). It is beyond cavil that the threats against the rival carters Kubecka and the bribes are related to the furtherance of the Lucchese Family's control of the Long Island waste industry, and that Avellino and the other named defendants embody a threat to the domination of an industry that has been plagued with corruption for the past decade.

■ Similarly, the government has shown that Avellino was employed by or was associated with an enterprise. Section 1961(4) provides that:

"[E]nterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]

18 U.S.C. § 1961(4). While Avellino focuses on that part of this Court's earlier decision in which it was noted that the government may be required to demonstrate the existence of an "enterprise" encompassing all members and affiliates of the Long Island carting industry, *Private Sanitation*, 793 F.Supp. at 1127, this Court has already held that PSIA and Local 813 constitute enterprises within the meaning of RICO. *Id.* Consequently, this argument is also meritless.

2. *Motion Supported by Inadmissible Evidence*

■ Avellino contends that the government's motion must be denied because it is supported by inadmissible evidence. Rule 56(e) of the Federal Rule of Civil Procedure provides that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). This rule only requires a party to authenticate its proffered evidence when the adverse party challenges that evidence. *See H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir. 1991).

■ Avellino raises three challenges to the transcripts of intercepted communications involving him and his co-conspirators which were obtained pursuant to state orders. Exh. 3 to McCormick Decl. To demonstrate Avellino's involvement in the Long Island solid waste industry, declarant McCormick refers to conversations in Avellino's Jaguar, *see, e.g.*, McCormick Decl. at ¶¶ 22–30, and to a conversation intercepted between John Corrigan, former executive director of PSIA, and Cortland Wood. *Id.* at ¶ 17.

First, Avellino questions whether the government obtained the necessary judicial

---

7. Avellino does not challenge the timing element of racketeering acts under RICO which must occur within ten years of each other. 18 U.S.C. § 1961(5). Here, Avellino extorted the Kubeckas sometime between December 1981 and October 1983 and the public officials were bribed sometime between August 1982 and December 1983, McCormick Decl. at ¶¶ 57, 71, well within the ten year window.

approval to unseal the tapes as required by 18 U.S.C. § 2517(5). In *United States v. Marion*, 535 F.2d 697, 701 (2d Cir.1976), the court held that federal law controls where a defendant claims that a law enforcement agency violated the provisions of an eavesdropping warrant issued by a state court. Second, Avellino argues that the government must "produce clear and convincing evidence of authenticity and accuracy" of the tapes, *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.), *cert. denied sub nom. Sansone v. United States*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977), and show that they have a judicial seal or explain the absence of such a seal, 18 U.S.C. § 2518(8)(a), before the tapes will be admissible at trial. Finally, he states that certain statements contained in those tapes are inadmissible hearsay.

It is clear that each of these challenges is insufficient to defeat the government's motion. Avellino may not relitigate the admissibility of tapes which he challenged at the earlier state proceeding in which he pleaded guilty. The lower court denied suppression of the tapes on most of the arguments raised by Avellino and his co-defendants, only leaving open their objection "as to the existence of one duplicate tape of intercepted conversations in Avellino's Jaguar automobile (Tape # 768) and as to the contents of four other tapes of intercepted conversations in [the] Jaguar [ ] (Tapes # 982, 982A, 985 and 1037)." Reply Memo. of Law in Further Supp. of Pl's Mot. for Summary J. at 22.

■ However, once Avellino pleaded guilty, no hearing was ever held with respect to those five tapes. Thereafter, Avellino appealed his conviction to the Appellate Division, challenging the admissibility of all the tapes on various grounds, including whether the Director of the Organized Crime Task Force may be statutorily authorized to apply for a court-authorized eavesdropping warrant in light of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510–2520) and whether the tapes were judicially sealed in a timely fashion. The Appellate Division upheld the Director's authority to apply for an eavesdropping warrant and summarily denied the remaining challenges as meritless or unpreserved for appeal. *People v. Vespucci*, 144 A.D.2d 48, 536 N.Y.S.2d 487, 490–92 (2d Dep't 1988), *aff'd*, 75 N.Y.2d 434, 554 N.Y.S.2d 417, 553 N.E.2d 965 (1990), *cert. denied sub nom. Corrigan v. New York*, 498 U.S. 814, 111 S.Ct. 52, 112 L.Ed.2d 28 (1990). In affirming the Appellate Division, the New York Court of Appeals expressly rejected the defendants' argument that the tapes should have been suppressed because they were not timely sealed. *Id.* at 441–42, 554 N.Y.S.2d at 421, 553 N.E.2d at 969. While the exact grounds upon which Avellino and his co-defendants appealed the lower court's denial of their motion to suppress is not clear from the government's moving papers, Avellino is nonetheless barred from challenging the tapes at trial. He is either collaterally estopped from relitigating the issues already addressed by the New York Courts, *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365, 1992 WL 374039 (2d Cir. 1992) (citing cases), or he is barred by the *doctrine of res judicata* from litigating any claim or argument which he could have raised before those courts, *see Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 306–07, 165 N.E. 456, 457 (1929) (Cardozo, J.).

Furthermore, Avellino's challenges to the admissibility of the tapes is insufficient to defeat the government's summary judgment motion. The transcripts of the intercepted conversations that are annexed to Agent McCormick's declaration do not appear to include any of the disputed tapes, i.e., Tape # 768, 982, 982A, 985 and 1037. Moreover, even if Agent McCormick relied on those tapes, and despite Avellino's general challenge to all of the tapes on the ground that the government has not demonstrated that the tapes were resealed after being used in other proceedings, *United States v. Long*, 917 F.2d 691, 699–700 (2d Cir.1990) (citing *United States v. Scopo*, 861 F.2d 339, 347 (2d Cir.1988), *cert. denied*, 490 U.S. 1048, 109 S.Ct. 1957, 104 L.Ed.2d 426 (1989)), the government has properly supported its motion with other admissible evidence. The government

points to the trial testimony of three government informants, Alphonse D'Arco, Peter Chiodo and Salvatore Gravano, to show that Avellino is involved in the Long Island carting industry, *see, e.g.*, McCormick Decl. at ¶¶ 6, 8, 11, 14, 18, 19, and that he collects tribute for garbage collection from Long Island businesses, *see, e.g., id.* at ¶¶ 37, 39–42. In addition, while Agent McCormick cites portions of the tapes to show Avellino's involvement in coercing the Kubeckas, *id.* at ¶¶ 52–56, his guilty plea to coercion in the first degree conclusively establishes the facts underlying the predicate act of the Hobbs Act violation. Similarly, while the government cites portions of the intercepted conversations to show that Avellino was involved in bribing Romersa and Biondi, *id.* at ¶¶ 67, 70, 71, there is sufficient admissible evidence to establish the predicate act of bribery, including his guilty plea to conspiracy in the fifth degree, an $800 check issued by PSIA to the Postmaster of Melville for postage stamps, and an entry in PSIA's cash disbursements journal listing Avellino's approval for that payment. *Id.* at ¶¶ 68, 69, 73. Therefore, the issue of admissibility of the tapes is immaterial to the determination of the government's motion for partial summary judgment.

Finally, the statements which Avellino attempts to challenge as inadmissible hearsay appear to fit within various exceptions to the hearsay rule, including personal statements of a party-opponent (Fed. R.Evid. 801(d)(2)(A)); and statements of co-conspirators (Fed.R.Evid. 801(d)(2)(E)).[8] *See, e.g., H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir.1991) (district court properly considered three documents constituting admission of party opponent in summary judgment context). Therefore,

Avellino's opposition to the government's motion on these grounds is without merit.

### 3. *Additional Discovery under Rule 56(f)*

Under Rule 56(f) of the Federal Rules of Civil Procedure a court may, *inter alia*, order a continuance to permit a party opposing a summary judgment motion to conduct discovery to ascertain "facts essential to justify the party's opposition...." Fed.R.Civ.P. 56(f). "[A] party seeking such discovery must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.1989) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985)).

Avellino premises his request for a continuance under Rule 56(f) due to the stay of discovery in this action. Avellino's request is disingenuous. He has repeatedly invoked his fifth amendment privilege in an earlier proceeding[9] and intends to invoke that privilege in this proceeding. *See* Aff. of Brian Linder, dated November 9, 1992, at ¶ 2 ("Upon my advice, in view of the very real threat of an impending criminal prosecution, Mr. Avellino is unwilling to waive his 5th Amendment privilege and provide an affidavit in response to plaintiff's motion."). There is no reason to grant a continuance to a litigant who has personal and intimate knowledge of the underlying facts for the purported purpose of conducting discovery to ascertain those

---

**8.** In addition, Avellino's challenge to the statement of James Corrigan, former Executive Director of PSIA, to Cortland Wood, in which Corrigan states that he has to be careful not to "usurp" Avellino's authority in PSIA matters, would appear to fall into the hearsay exception for declarations against penal interest where the declarant is unavailable due to his death. Fed. R.Evid. 804(b)(3). *See* Reply Memo. of Law at 29 & n. 9; Def's Memo. of Law at 13–14.

**9.** The government has submitted a transcript of Avellino's October 8, 1991 deposition in *State of New York v. Salem Sanitary Carting Corp.*, No. CV–85–0208 (Glasser, J.), where Avellino invoked the privilege in response to every question except to state his name for the record. Exh. B to Supplemental Decl. of Donald McCormick, dated November 25, 1992.

identical facts. Accordingly, Avellino's request is denied.[10]

4. *Constitutionality of Broad Injunctive Relief*

To further the salutary purposes of RICO, Congress authorized district courts to:

> prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

18 U.S.C. § 1964(a). In furtherance of that stated purpose, this Court has the authority "to enter reasonable injunctions against RICO violators restricting their future business activities." *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F.Supp. 1411, 1441 (E.D.N.Y.1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989). In the exercise of that authority, it is hereby ordered that:

(1) defendant Avellino refrain from participating directly or indirectly in the carting industry, any company engaged in the business of carting, any trade waste association and in the affairs of Local 813;

(2) defendant Avellino be divested of his interests in the carting industry and in PSIA enterprises;

(3) defendant Avellino disgorge the illicit proceeds of his racketeering activity;

(4) defendant Avellino refrain from associating with the other defendants in this action for any commercial purpose; and

(5) defendant Avellino refrain from associating with known members and associates of organized crime for any commercial purpose.

With respect to the injunction against associating with other defendants and with known members and associates of organized crime as indicated in (4) and (5) above, its issuance is designed to further the significant governmental interest in eliminating the insidious impact upon a captive community of corruption and racketeering in the Long Island carting industry. *See, e.g., United States v. International Bhd. of Teamsters*, 941 F.2d 1292, 1297 (2d Cir.1991) (upholding similar injunctive relief to further significant governmental interest in eradicating crime and corruption in labor unions).

## CONCLUSION

For the foregoing reasons, Avellino's request for a continuance is denied and the government's motion for partial summary judgment providing for broad injunctive relief against defendant Salvatore Avellino is granted. Accordingly, it is hereby ordered that Avellino is enjoined from the activities listed in the aforementioned five decretal paragraphs.

SO ORDERED.

---

10. Avellino also objects to this Court granting summary judgment for the government where he is unable to submit an affidavit in opposition based on his invocation of the privilege. Def's Memo. of Law at 18. However, as this Court has already noted, that consequence is not unprecedented. Memorandum and Order, dated October 22, 1992, at 12 (citing *F.S.L.I.C. v. Molinaro*, 889 F.2d 899, 901–03 (9th Cir.1989) (granting government's partial summary judgment motion despite defendant's inability to submit counter-affidavits during ongoing grand jury investigation)).