**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Leone BOSURGI et al.,
Defendants-Appellees,**

**and**

**Estate of Adriana Bosurgi, Deceased, and W. Sanderson & Sons, Additional Defendants to Amended Counterclaim and Amended Cross-Claim for Interpleader.**

**CHEMICAL BANK, Third-Party
Plaintiff,**

v.

**Leone BOSURGI et al., Third-Party
Defendants.**

**Nos. 145, 146, Dockets 75–6013, 75–6053.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 7, 1975.

Decided Jan. 29, 1976.

Frederick P. Schaffer, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., of the Southern District of New York, David P. Land, Asst. U. S. Atty., New York City, of counsel), for plaintiff-appellant.

Samuel Gottlieb, New York City (Eugene H. Feldman, Bernard Beitel, Gainsburg, Gottlieb, Levitan & Cole, New York City, of counsel), for defendant-appellee Sociedad Anonima De Inversiones Comerciales E Industriales.

Benedict Ginsberg, pro se.

Peter E. Calamari, New York City (John R. Hupper, Cravath, Swaine & Moore, New York City, of counsel), for third-party plaintiff Chemical Bank.

Before KAUFMAN, Chief Judge, and ANDERSON and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

The government brought this action against Leone Bosurgi and Emilio Bosurgi, individually and as executors of the estate of Adriana Bosurgi, and against the Chemical Bank as statutory executor of the estate of Adriana Bosurgi, to recover estate taxes allegedly due upon the estate of Adriana Bosurgi, and it now appeals from orders of the United States District Court for the Southern District of New York, Kevin T. Duffy, *Judge* (1) granting the motions of two later-added defendants, Sociedad Anonima De Inversiones Comerciales E Industriales ("SAICI") and Benedict Ginsberg, and of the Chemical Bank for summary judgment dismissing the government's complaint; (2) staying the government from proceeding with depositions and documentary discovery of Ginsberg and of SAICI; and (3) denying the government's motion for summary judgment in its favor against SAICI. We reverse the orders granting summary judgment in favor of the defendants and staying discovery. The denial of the government's motion for summary judgment in its favor is affirmed. The case is remanded for further proceedings consistent with this opinion.

On March 27, 1963, Adriana Bosurgi, an Italian citizen and non-resident alien of the United States, died the registered owner of a custodian account in her name with the Chemical Bank of New York which contained securities having a fair market value in excess of $1,000,000. Following her death, the account was transferred to her two sons, Leone and Emilio, Italian citizens and non-resident aliens of the United States. Upon succeeding to their mother's account, the sons entered into a custodian account agreement with the Chemical Bank with reference to the securities transferred to them from their mother's account. In 1966 the Bosurgi brothers (hereinafter referred to as "the Bosurgis") retained Benedict Ginsberg, Esq., a New York at-

torney, to bring suit in the Supreme Court, New York County, against the bank for damages caused by its alleged mismanagement of the custodian account owned by them. This action was settled in September 1970 by the bank's promise to pay them $215,000.

On March 2, 1971, the government, invoking jurisdiction under 26 U.S.C. § 7402(a),[1] brought the present action in the Southern District of New York against the Bosurgis and the Chemical Bank for $666,780 in taxes assessed against the Bosurgi estate, claiming that the brothers and the bank were liable pursuant to 26 U.S.C. §§ 2002, 2101(a), 2104(a), 2106(a), 2203, and 6901(a)(1)(A)(ii),[2] and seeking to foreclose on the $215,000 derived from the Bosurgi-Chemical Bank settlement. On the same date the district court in an order signed by Judge Marvin E. Frankel restrained the bank and the Bosurgis from transferring the funds. This order was modified on March 18, 1971, by Judge Bonsal, who authorized Ginsberg as custodian to invest the $215,000 in certificates of deposit, subject to the court's earlier restraint on transfer. On April 21, 1971, we affirmed this latter order.

In its answer to the government's complaint the bank added the estate of Adriana Bosurgi and Benedict Ginsberg as defendants, the latter because he claimed $78,491 in attorney's fees for representation in the Bosurgis' state court action against the bank. Jurisdiction was obtained over the Bosurgis by service of the complaint on Ginsberg as their agent and by substituted service.

In the meantime, on June 2, 1971, SAICI, although aware of the federal court action and the Southern District's custody of the $215,000, brought suit in the Supreme Court, New York County, against the Bosurgis and Ginsberg, claiming ownership of the fund in the federal court's custody by virtue of a financing agreement entered into on December 10, 1954, between SAICI, Adriana Bosurgi, and the Bosurgi brothers. On June 10, 1971, Ginsberg advised the state court that he had no authority to appear for the Bosurgis in that action. However, on July 14, 1971, he appeared in the action on behalf of the Bosurgis and himself. The Bosurgis filed an answer denying SAICI's allegation of ownership of the fund of $215,000. However, when SAICI on October 12, 1971, moved in the state court for summary judgment granting the relief demanded by it and consolidating the action with the Bosurgis' 1966 action against the bank, the Bosurgis, represented by Ginsberg, did not oppose these motions except insofar as Ginsberg sought an order requiring payment to him of the $78,491 he claimed as his fee.

SAICI's motion for summary judgment in its state court action was based principally on (1) what purported to be a December 10, 1954, trust agreement between it, Adriana Bosurgi, and the Bosurgi brothers, providing that in consideration of SAICI's financing of a plan for production by W. Sanderson & Sons of citrus by-products in Argentina, the financing would be repaid gradually through deposits of dollars or investments in a New York bank account to be maintained by Mrs. Bosurgi in a fiduciary capacity for SAICI, (2) purported letters from the Bosurgis to SAICI dur-

1. Title 26 U.S.C. § 7402(a) gives the district courts jurisdiction, *inter alia*, "to render such judgments and decrees as may be necessary [and] appropriate for the enforcement of the internal revenue laws." Under 26 U.S.C. § 7403, the Attorney General is authorized to file civil actions in the district court to enforce tax liens against property, and upon the filing of such an action, the district court is required to "finally determine the merits of all claims to and liens upon the property . . . ."

2. The estate of a nonresident alien is subject to estate tax to the extent that the property of the estate is located in the United States, 26 U.S.C. §§ 2101(a), 2106(a), and shares issued by United States corporations are deemed to be property located in the United States. *Id.,* § 2104(a). Thus, if Adriana Bosurgi was the owner of the account in question, her estate would be subject to taxes on the account. Chemical Bank and the Bosurgis would apparently be liable for payment of the taxes as statutory executors, *id.,* §§ 2002, 2203, and the Bosurgis might also be liable as transferees of the account, *id.* § 6901(a)(1)(A)(ii).

ing the period 1955–1962 reporting to the latter with respect to the accounts between them, some of which refer to a fiduciary deposit with the Chemical Bank held by the Bosurgis for SAICI, and (3) a letter from Ginsberg to SAICI's counsel dated September 14, 1971, to the effect that his clients, the Bosurgi brothers, had authorized him to inform SAICI that the documents relied upon by SAICI were "true copies of the originals, and that they were duly executed by the persons whose signatures appear thereon."

While SAICI's motion was pending in the state court action, Ginsberg, in opposing discovery by the government of him in the federal action, submitted an affidavit dated October 12, 1973, to the effect that on August 12, 1971, he had been informed by the Bosurgis that they could not supply any information that would form a basis for opposition to SAICI's motion for summary judgment.[3] Notwithstanding the decision by the Bosurgis and Ginsberg not to oppose SAICI's state court claim of ownership, Justice Kapelman denied SAICI's motion because of the non-joinder of the United States as a party and the federal court's jurisdiction over the res, the $215,000 fund. Upon appeal the Appellate Division, First Department, on November 8, 1973, reversed Justice Kapelman's decision, pointing to the fact that the documentary evidence relied upon by SAICI was conceded by the Bosurgis and Ginsberg to be authentic and conclusively established that the fund with the bank represented a trust established under the December 10, 1954 agreement, leaving no genuine issue of fact. The court further stated that the result would not affect the federal government's tax lien on the fund.

In the meantime, SAICI having been unsuccessful in seeking to set aside service upon it of a complaint in the federal suit, Ginsberg and SAICI obtained from Judge Duffy a stay of the government's discovery of them in the federal action. SAICI and Ginsberg thereupon moved for summary judgment dismissing the government's complaint, relying principally upon the evidence which had persuaded the Appellate Division to reverse Justice Kapelman in the state court action.

The government opposed SAICI's motion and itself filed a motion for summary judgment in its favor. In support of its own motion and in opposition to that of SAICI and Ginsberg, the government introduced records of the Chemical Bank showing that on May 13, 1954, which was more than six months before the financing agreement relied upon by SAICI, Adriana Bosurgi had opened up the securities account with the Chemical Bank by a cash deposit of $400,000, entering into a Custodian Account Agreement, § 5 of which designated her as the "owner" of the account, which was accordingly registered in her name as owner. This registration continued until her death in 1963. The bank's records further showed that in April, 1963, her sons, as transferees of their mother's account, entered into a custodial agreement with the bank in which they impliedly represented themselves to be the owners by authorizing the bank as their agent to execute "all necessary certificates of ownership which may be required by the income tax regulations of the United States." The fund of $215,000 upon which the government seeks to foreclose in the federal action was derived from the Bosurgi account as the result of the brothers' settlement of their mismanagement claim against the bank.

On February 25, 1975, Judge Duffy granted the motions of SAICI and Ginsberg for summary judgment and denied the government's cross-motion for summary judgment. *United States v. Bosurgi,* 389 F.Supp. 1088 (S.D.N.Y.1975). His opinion rested heavily on the Appellate

---

**3.** The affidavit represented that the occasion for Ginsberg's August 1971 conference with the Bosurgis in Italy, at which they conceded the authenticity of the December 10, 1954 agreement, was the pendency of SAICI's motion for summary judgment. Actually SAICI did not file such a motion in its state court suit until two months later and did not file such a motion in the federal action until January 21, 1974.

Division's decision which was predicated on Ginsberg's affidavit to the effect that the Bosurgis had conceded that the December 10, 1954, financing agreement and subsequent correspondence between SAICI and the Bosurgis were authentic and that the money on deposit with the Chemical Bank was held by the Bosurgis as trustees for the benefit of SAICI. The counter evidence offered by the United States was held by Judge Duffy not to be inconsistent with the existence of the December 10, 1954, trust agreement. Accordingly he concluded that the state court record and decision was entitled to "considerable regard" and that since the government had failed "to offer any convincing evidence that controverts the existence of a trust, SAICI's motion for summary judgment should be granted." 389 F.Supp. at 1093.

## DISCUSSION

■■■ Summary judgment is a drastic remedy to be granted only where the requirements of Rule 56, F.R.Civ.P., have clearly been met. A motion for such a judgment does not entitle the court to try issues of fact. Its function is limited to deciding whether there are any such issues to be tried. In making that determination "it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought . . . with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce and Industry Insurance Company,* 524 F.2d 1317, at 1320 (2d Cir. 1975); *Judge v. City of Buffalo,* 524 F.2d 1321 (2d Cir. 1975). See *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■■■ Guided by these basic principles we must conclude that the district court's grant of summary judgment in the present case was erroneous. It is difficult to conceive of a clearer example of a genuine issue of material fact than that presented by the conflict in evidence with respect to the principal issue

in the case—the ownership of the Bosurgi account with the Chemical Bank. There is substantial evidence from which a jury might infer that at the time of her death Adriana Bosurgi was the owner of that account. She opened it on May 13, 1954, more than six months before the execution of the December 10, 1954, agreement relied upon by SAICI, making a cash deposit of $400,000 and representing in writing that she was the owner of the account. Neither in her initiation of the account nor in her maintenance of it during the following nine years did she ever indicate to the bank that she was acting as a trustee for SAICI. When her sons succeeded to the account in 1963, they likewise represented to the bank that they were the owners rather than trustees. Nothing in the bank's records suggests that any of the Bosurgis were acting in a fiduciary capacity.

Turning to the December 10, 1954 agreement relied upon by SAICI, one would expect that if the Bosurgis' account with the Chemical Bank, which contained deposits or securities worth more than $400,000, was held in trust to satisfy loans made by SAICI to W. Sanderson & Sons, there would be some mention of it in the agreement between the parties. However, there is none. Instead the agreement provides that the repayment to SAICI of an unspecified amount of financing "shall take place gradually by means of deposits in dollars made in New York, into a New York bank to be indicated by the financing group, or by means of interest-bearing investments according to arrangements to be made with Mrs. Bosurgi" who is authorized to hold the deposits in her own name "provided she commits herself to give full account for it when so requested."

In support of its motion and in opposition to SAICI's motion, the government introduced SAICI's published financial statements for the period from December 31, 1955, to December 31, 1963, the authenticity and accuracy of which have

not been questioned by SAICI.[4] These statements are significant not only for what they contain but for what they fail to show. If, as SAICI contends, it was the beneficial owner of the Bosurgi account with the Chemical Bank, which contained gross assets ranging from $400,000 in 1954 to over $1,000,000 in 1963, one would expect its financial statements, especially in view of the relatively small value of the assets reported by it, to show this valuable asset and indicate the substantial amounts of income earned by it annually, which were approximately $20,000 per year during the earlier part of the account's existence and $30,000 for the year 1962. Instead, SAICI's financial statements listed total assets ranging from $50,900 on December 31, 1955, to $79,441 on December 31, 1963, including its investment in stock of W. Sanderson & Sons, which was carried at $32,112. Similarly, only nominal gross income is shown by the statements rather than the much larger dividend income earned by the Bosurgi account. Furthermore the financial statements, although they indicate SAICI owned shares in W. Sanderson & Sons, fail to indicate that SAICI loaned money to that company or to anyone else or that it had received or was entitled to receive any *gradual* repayment of any loan or to be credited with any gradual deposits into any securities account.

As against the foregoing evidence, which could provide the basis for an inference of Bosurgi ownership of the account, there is evidence to the contrary, which indicates that some or all of the account may well have been held by the Bosurgis in trust for SAICI. The principal proof supporting SAICI's claim is a series of five letters addressed by the Bosurgis to SAICI, purportedly signed by Adriana and her two sons on various dates during the period from January 10, 1959 to December 20, 1962, some of which refer to accounts administered by Adriana as trustee for SAICI, including securities deposited in an account with the Chemical Bank. It is unclear, however, whether the letters refer to all or any part of the particular account in question. Moreover, although Ginsberg has stated that the Bosurgis conceded the authenticity of the letters, the government questions their authenticity, pointing to the absence of any affidavits by the Bosurgis or SAICI, and suggesting that the documents may have been furnished as part of a post-litigation scheme on the part of the Bosurgis and SAICI to admit SAICI's claim of ownership and not to oppose its motion for summary judgment because, if SAICI were adjudged the owner of the account, the Bosurgis would escape liability to the United States for estate taxes. If payment of these heavy taxes could be avoided, presumably a balance would remain in Ginsberg's custody after payment of any additional income tax that might be levied against SAICI.

■ The government further argues—correctly in our view—that upon a motion for summary judgment the only proper method of supporting SAICI's claim that the Bosurgis held the Chemical Bank account in trust for it, would be to furnish affidavits on personal knowledge or testimony under oath by the Bosurgis and SAICI attesting to the ownership and trust relationship, see Rule 56(e), F.R.Civ.P., rather than rely upon the affidavit of an attorney, which is not on personal knowledge and which appears to be open to question because of material inaccuracies with respect to the occasion for his consultation with the Bosurgis in August 1971 when the concessions of authenticity were allegedly made by them. We agree that the attorney's affidavit was not a permissible substitute for personal knowledge of the Bosurgis with respect to this crucial issue.

■ Although Ginsberg's affidavit was not on personal knowledge and thus amounted to hearsay, the district court found "it sufficient that these facts are

4. Financial statements were required to be published by SAICI pursuant to the laws of Uruguay during the period indicated. However, there were no financial statements published by SAICI prior to 1955.

in the record of the state court proceedings which is before this Court" and that the government had failed to "offer any convincing evidence that controverts the existence of a trust." We disagree. In providing that "supporting and opposing affidavits shall be made on personal knowledge," Rule 56(e) imposed a mandatory requirement, *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *Peter Pan Fabrics, Inc. v. Dixon Textile Corp.,* 280 F.2d 800, 803–04 (2d Cir. 1960). The state court's acceptance of an attorney's affidavit with respect to facts not personally known to him does not entitle a movant to circumvent the requirements of the Rule in a federal court proceeding. Nor may a party opposing a motion for summary judgment be denied a trial on the ground that the district judge does not find the opposing evidence to be "convincing." Here the persuasiveness of the evidence offered by the government is for the jury to decide and might well depend, among other things, on whether the Bosurgis and SAICI, subject to cross-examination, testified credibly that the Chemical Bank account was held in trust for SAICI.

■ Nor can we accept the district court's conclusion that the Appellate Division's decision that a trust relationship existed is entitled to great weight in this proceeding. Since the federal court first assumed jurisdiction over the $215,000 fund, the ownership of which is in dispute, economy of judicial resources and avoidance of conflicting results would not appear to be served by giving controlling effect to the later adjudication of another court which did not have control over the fund.[5] However, we need not resolve that issue; even if due regard is accorded to the state court's adjudication, see *Commissioner v. Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), it would be only as valid as its evidentiary base. We have not hesitated to disregard state court judgments affecting federal tax liability where the factual questions involved were not contested in the state court, see *Lowe v. Commissioner,* 510 F.2d 479 (2d Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44, 44 U.S.L.W. 3201 (1975) or where a lower state court made an erroneous application of state law, see *Cheng Yih-Chun v. Federal Reserve Bank,* 442 F.2d 460 (2d Cir. 1971). Here also there are sound reasons for not adhering to the Appellate Division's decision. SAICI's motion for summary judgment in the state court action was unopposed. The state court, basing its decision on an attorney's hearsay affidavit regarding the authenticity of the Bosurgi-SAICI correspondence, did not have before it the conflicting evidence submitted in the federal suit by the government, which was not a party to the state court proceeding. The additional evidence raises a clear issue regarding the ownership of the Chemical Bank account. Under the circumstances, the state court's decision, even given proper regard, did not necessitate a federal grant of summary judgment.

■ The district court's denial of the government's motion for summary judgment must be affirmed for essentially the same reasons which require reversal of the grant of summary judgment in favor of SAICI, i. e., the existence of a genuine issue of fact with respect to the ownership of the Bosurgi Chemical Bank account. Since the opposition to the government's motion is also based on a hearsay affidavit of the same attorney, which was held insufficient to support a grant of summary judgment to SAICI, symmetry might seem to dictate that we disregard this proof in deciding the government's motion. However, the circumstantial evidence underlying the government's motion is insufficient, in view of the December 1954 agreement (the authenticity of which is not serious-

---

5. *Vernitron Corp. v. Benjamin,* 440 F.2d 105 (2d Cir.), *cert. denied,* 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971), relied upon by SAICI, is clearly distinguishable. The issue involved in that case was whether 28 U.S.C. § 2283 barred the federal court from staying certain state court proceedings. Here no such stay is involved; the issue is the effect to be given to the state court judgment.

ly disputed by the government) to warrant a grant of summary judgment.[6] Nor are we persuaded, in the absence of any showing of prejudice to the government, that SAICI, having escaped payment of an additional 15% income tax upon dividends paid into the Chemical Bank account by permitting the Bosurgis to represent themselves as the owners,[7] should be estopped to deny that the Bosurgis owned the account. Unlike the situation in *Stair v. United States,* 516 F.2d 560 (2d Cir. 1975), if SAICI should establish its ownership of the account, the government would still be able to collect the additional 15%, amounting to approximately $140,000, through its lien on the account. See 26 U.S.C. § 6501(c) (exceptions to statute of limitations). If, on the other hand, the government establishes that the account was owned by the Bosurgis, the account will be applied toward payment of the estate taxes. Thus the government cannot show prejudice essential to its claim of estoppel.

■ The district court's grant of summary judgment in favor of SAICI is reversed, its denial of summary judgment to the government is affirmed, and the case is remanded for further proceedings consistent with this opinion.[8]

---

6. While the terms of the agreement do not establish that Adriana Bosurgi merely held the account in trust for SAICI, as the latter now contends, they do raise a sufficient inference that this might have been the case to make summary judgment in favor of the government inappropriate.

7. Title 26 U.S.C. § 871(a)(1)(A) establishes a 30% income tax rate on all dividend income earned in the United States by non-resident aliens, but this may be adjusted by treaty. See *id.,* § 894. Under the 1956 tax treaty between Italy and the United States, Adriana Bosurgi, as an Italian citizen and the record owner of the account, paid income tax on its dividends at a 15% rate. If SAICI, a Uruguayan corporation, is actually the owner of the account, it is liable for tax at a 30% rate, *id.,* § 881(a)(1), which has not been modified by

any treaty between the United States and Uruguay.

8. The district court should, on the remand, fix the amount of Ginsberg's priority lien for attorney's fees after hearing any evidence presented by the interested parties. In view of the fact that 26 U.S.C. § 6323(b)(8) gives priority over a tax lien to a lien for an attorney's fee only "to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement," and of the fact that the state court merely adopted a stipulation between SAICI and Ginsberg as to the amount of the fee, we believe that the district court should determine whether this sum is reasonable compensation.