UNITED STATES of America, Plaintiff,

v.

GLENS FALLS INSURANCE
COMPANY, Defendant.

No. 80–CV–868.

United States District Court,
N. D. New York.

Nov. 23, 1981.

George H. Lowe, U. S. Atty., N. D. New York, Syracuse, N. Y., for plaintiff; George A. Yanthis, Asst. U. S. Atty., Albany, N. Y., of counsel.

Charles E. Snow, Albany, N. Y., for defendant.

## MEMORANDUM—DECISION and ORDER

MINER, District Judge.

### I.

This is an action to recover for monies allegedly due the Government under the terms of a performance bond issued by defendant as surety for a defaulting contractor. Jurisdiction is founded upon the provisions of 28 U.S.C. § 1345. Before this Court is the Government's motion for (1) an order pursuant to Rule 56 of the Fed.R. Civ.P. granting summary judgment on the grounds that the defendant, through the contractor, Rhein Contracting Corporation, has failed to exhaust mandatory administrative remedies, and (2) for an order pursuant to Rules 12(b)(1) and (6) and 56, Fed.R. Civ.P., dismissing defendant's counterclaims or granting summary judgment on the grounds that the defendant, through the contractor Rhein Contracting Corporation, has failed to exhaust mandatory administrative remedies.

### II.

On June 28, 1973, the United States Air Force awarded a contract to the Rhein Contracting Corporation of Albany, New York. The contract was for the repair of roofs of base facilities at Plattsburgh Air Force Base, New York. The defendant, Glens Falls Insurance Company (hereinafter "Surety"), as surety for the contractor Rhein Contracting Corporation (hereinafter "Rhein"), executed a performance bond on July 11, 1973 for the penal sum of $158,000 to secure performance of the contract. The terms of this performance bond provide that the obligations of the Surety would be void and of no effect only if the principal, Rhein, performed all the terms and conditions of the contract. Rhein completed approximately 17 percent of the required work and abandoned performance on September 17, 1974.

The contract was terminated for default on October 31, 1974. On April 24, 1975, bids were opened for reprocurement of the contract. Trataros Painting and Construction Corporation (hereinafter "Trataros") submitted the lowest bid in the amount of $193,335.00. The second lowest bid was received from NIK General Contractor (hereinafter "NIK") in the amount of $242,076.00. On May 2, 1975, the Surety was advised by the Government that the low bidder claimed a mistake in its bid. On May 14, 1975, Contracting Officer Paul R. Pierson conducted an inquiry into the claimed mistake in bid by Trataros and issued a statement pursuant to Armed Services Procurement Regulations (ASPR), § 2–406.3(e)(3)(v), in which he recommended that, although the information submitted by Trataros was not adequate to determine a bona fide mistake in bid, it is in the best interest of the Government to reject the bid as unreasonable.[1]

On June 20, 1975, a contract was entered into between the Government and NIK, the second lowest bidder, in the amount of $242,076.00. Subsequently, the Government demanded $114,223.52, plus interest at 8⅞ percent from September 8, 1975, from the Surety. This sum represented the NIK bid of $242,076.00, plus the agreed extra cost of $1,696.00, less the admitted contract balance of $129,548.48. On September 2, 1977, the Surety tendered a check in the amount of $65,482.52 to the Government. This sum represented the difference between the Trataros low bid of $193,335 and the agreed contract balance of $129,548.48 plus the agreed extra cost.

On September 8, 1975, a Notice of Assessment was issued to Rhein for the excess reprocurement costs. The Surety, at this

---

1. Contracting Officer Pierson believed that to accept Trataros' bid could well lead to another termination for default. Staff Judge Advocate James A. Kickham reviewed and confirmed the Contracting Officer's recommendation on May 19, 1975. By administrative determination dated May 27, 1975, Acting Staff Judge Advocate Hebert decided that Trataros had made a bona fide mistake and should be permitted to modify its bid.

time, unsuccessfully attempted to contact Rhein regarding the Government's demand for the excess costs.[2] The default termination and the excess cost assessment were not appealed by either the contractor or the Surety.

On October 28, 1980, the Government filed suit against the defendant for the remaining $69,126.76 plus interest. The defendant alleges as defenses and counterclaims that (1) the Government failed to follow its own regulations respecting mistakes in bids; (2) that the decision of the contracting officer that there was no mistake in the Trataros bid should have been "final and conclusive"[3]; (3) that the interest computations of the Government are incorrect, and (4) that the amount of defendant's debt is $65,482.52 and has already been paid or, alternatively, that defendant has overpaid the Government by $12,955.00 and that the Government must remit said $12,955.00 to the defendant.

### III.

The Government argues that summary judgment must be granted as a matter of law because the defendant, and the insured contractor, failed to exhaust mandatory administrative remedies and, thus, are now estopped from contesting the amount of reprocurement costs and from asserting the above defenses and counterclaims. It is uncontroverted that the Surety and Rhein did not appeal from the Termination Contracting Officer's final decision. However, the Government has the burden of demonstrating that it is entitled to judgment as a matter of law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Bosurgi*, 530 F.2d 1105 (2d Cir. 1976).

Under the Wunderlich Act, 41 U.S.C. § 321, a contractor must seek relief provided under the contract or be barred from any relief in the courts. *See, e.g., Crown Coat Front Co. v. United States*, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); *R.E.D.M. Corp. v. Le Secco*, 412 F.2d 303 (2d Cir. 1969).[4] The availability of an administrative remedy makes it necessary to use such remedies before a claim may be taken to the courts. *United States v. Hammer Contracting Co.*, 216 F.Supp. 948, 950 (E.D.N.Y.1963), *aff'd*, 331 F.2d 173 (2d Cir. 1964). Therefore, Rhein, as contractor, by not seeking an administrative remedy, relinquished its rights of action in this Court.

The Government contends that the Surety also had the obligation to appeal, in the name of the contractor, to the Armed Services Board of Contract Appeals. It argues that failure to do so deprived the Surety of the right to assert any defenses or counterclaims in this action. While the right of a surety to assert defenses or claims of the defaulting contractor has been judicially recognized, *American Surety Co. of New York v. United States*, 317 F.2d 652 (8th Cir. 1963); *United States v. Duby*, 201 F.2d 800 (9th Cir. 1952), the exercise of that right has been contingent upon the *consent* of the defaulting contractor, *id.*

The Government's position that there is a "mandatory" administrative remedy cannot be sustained. For this Court to uphold the Government's position would subject a surety's right to appeal entirely to the whims of its defaulted contractor. Such a "mandatory" administrative remedy would be highly arbitrary and inequitable,

**2.** In September 1974, the Surety investigated Rhein's operation and determined that Rhein was insolvent. On May 27, 1975, Richard Wilkie, Jr., President of Rhein Contracting Corporation, was adjudged bankrupt pursuant to a Federal Bankruptcy Petition filed in Poughkeepsie, New York.

**3.** Under Armed Services Procurement Regulation (ASPR) 7–602/a.

**4.** 41 U.S.C. § 321 reads in part, "... [t]hat any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." Thus, in a contract with a "disputes clause," as in the case here, that provides that a dispute be resolved through administrative procedure, the failure of a contractor to follow such procedure precludes a court from any jurisdiction over the matter.

particularly under circumstances in which the contractor had an adverse relationship with a surety, or as here, was insolvent or could not be reached for its required consent. One who has no fair opportunity to exhaust an administrative remedy cannot be barred from a court for a failure to do so. *See Craycroft v. Ferrall*, 408 F.2d 587 (9th Cir. 1969), *vacated and remanded*, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351. Therefore, this Court holds that a surety, in the circumstances presented here, need not exhaust any administrative remedy. The Government's motion for summary judgment must be denied.

### IV.

The Government asserts that the defendant's counterclaim for overpayment of $12,955 is barred by the Tucker Act, 28 U.S.C. § 1346(a).[5] As the counterclaim is in the nature of a plea for affirmative recovery, and is in excess of $10,000, this Court dismisses that counterclaim under Rule 12(b)(1), Fed.R.Civ.P., for lack of jurisdiction over the subject matter. *See United States v. Ameco Electronics Corporation*, 224 F.Supp. 783 (E.D.N.Y.1963).

### V.

In light of the foregoing the Government's motion for summary judgment is denied, and the Government's motion to dismiss the overpayment counterclaim for lack of jurisdiction under the Tucker Act hereby is granted.

It is so Ordered.

---

**5.** The Tucker Act prohibits district court jurisdiction over any suit against the United States sounding in contract where the amount is over $10,000. Jurisdiction for suits over that amount is exclusively vested in the Court of Claims. This jurisdictional rule has been extended to counterclaims. *See U. S. v. Drinkwater*, 434 F.Supp. 457 (D.C.Va.1977). *See also Mitchell v. Richey*, 164 F.Supp. 419 (W.D.S.C. 1958).