UNITED STATES of America,
Plaintiff–Appellee,

v.

PRIVATE SANITATION INDUSTRY AS-
SOCIATION OF NASSAU/SUFFOLK,
INC., et al., Defendants,

Nicholas Ferrante, Defendant–Appellant.

Docket No. 94–6278.

United States Court of Appeals,
Second Circuit.

Argued Nov. 29, 1994.

Decided Nov. 30, 1994.

Opinion Filed Jan. 11, 1995.

---

Christopher G. Lehmann, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary Carter, U.S. Atty., of counsel), for plaintiff-appellee.

Paul A. Batista, New York City, for defendant-appellant.

Before: MAHONEY, McLAUGHLIN, and HEANEY,* Circuit Judges.

* The Hon. Gerald W. Heaney, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

MAHONEY, Circuit Judge:

Defendant-appellant Nicholas Ferrante moves this court for a stay pending appeal and an expedited appeal of a judgment entered October 18, 1994 in the United States District Court for the Eastern District of New York, I. Leo Glasser, *Judge,* that granted summary judgment and injunctive relief in favor of the United States on a civil complaint alleging a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* On November 30, 1994, we denied the motion for a stay and granted the motion for an expedited appeal, indicating that this opinion supporting our decision would follow.

Ferrante is one of many defendants, including various organized crime families, labor unions, and private sanitation companies, named in a complaint alleging a massive conspiracy to control the solid waste disposal industry on Long Island through the use and threatened use of force in violation of RICO. *See United States v. Private Sanitation Indus. Ass'n,* 793 F.Supp. 1114, 1121–23 (E.D.N.Y.1992) (describing alleged conspiracy in detail).

This appeal stems from the district court's grant of summary judgment against Ferrante. *See United States v. Private Sanitation Indus. Ass'n,* No. CV–89–1848, slip op. (E.D.N.Y. October 13, 1994). Ferrante had pled guilty in the Supreme Court of the State of New York to coercion in the first degree, in violation of New York Penal Law § 135.65(1), for threatening certain private contractors with damage to their property if they bid for waste disposal work. *Id.* at 2–3. The district court held that the conduct underlying this conviction, as established in Ferrante's plea allocution, was clearly indictable under the Hobbs Act, 18 U.S.C. § 1951, and was therefore a RICO predicate act under 18 U.S.C. § 1961(1)(B). Slip op. at 9–10.

■ In addition, the government alleged that Ferrante had bribed officials at the Oyster Bay dump in order to receive a reduction in the amount of money that his companies

were required to pay for use of the town's refuse disposal services. *Id.* at 10–11. The government submitted three affidavits by former Oyster Bay employees in support of this claim. *Id.* at 11. Ferrante's only response was an affidavit by his son that to the best of the son's knowledge, Ferrante had not paid any bribes. Because this statement was not based upon personal knowledge, it did not suffice to create an issue of fact precluding summary judgment. *See Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 188 (2d Cir.) (per curiam), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978); *cf. Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988) (motion for summary judgment must be supported by affidavit based upon personal knowledge); *United States v. Bosurgi,* 530 F.2d 1105, 1111 (2d Cir.1976) (same). Further, Ferrante asserted his Fifth Amendment privilege against self-incrimination in response to deposition questions concerning these alleged bribe payments. *Id.* The district court found, based upon this invocation and the essentially uncontroverted evidence submitted by the government, that Ferrante had clearly committed bribery in violation of New York State Penal Law § 200.00, a RICO predicate act under 18 U.S.C. § 1961(1)(A). Slip op. at 11–12.

Finally, the district found no material dispute of fact that these acts were sufficiently related to constitute a pattern, *id.* at 12–13, and that Ferrante was sufficiently involved in the Private Sanitation Industry Association, the RICO enterprise, to be subject to RICO liability. *Id.* at 13–15.

Having determined that the government was entitled to summary judgment with respect to liability, the court enjoined Ferrante from participating in the waste disposal business, violating RICO, and associating with his codefendants for any commercial purpose, and ordered him to divest his interests in various enterprises and to disgorge the proceeds derived from his unlawful conduct into a court-administered fund. *Id.* at 15–17. Ferrante appealed and filed the motion to which this opinion responds.

■ A party seeking a stay of a lower court's order bears a difficult burden. We consider (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if the stay is granted; (3) whether the movant has established a substantial possibility, which need not be a likelihood, of appellate success; and (4) the public interest. *Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir. 1992) (collecting cases).

■ There is no basis for a stay in this case. Ferrante points to no material issue of fact to establish a substantial possibility that the district court's summary judgment regarding liability will be reversed on appeal. Indeed, we affirmed the district court's grant of summary judgment and imposition of identical injunctive relief with respect to Ferrante's codefendant, Salvatore Avellino, Jr., in *United States v. Private Sanitation Industry Ass'n,* 995 F.2d 375, 377–78 (2d Cir. 1993) (per curiam). *See also United States v. Private Sanitation Indus. Ass'n,* 811 F.Supp. 808, 818 (E.D.N.Y.1992) (addressing constitutionality of broad injunctive relief and specifying terms of injunctive relief against Avellino), *aff'd,* 995 F.2d 375 (2d Cir.1993) (per curiam). Like Ferrante, Avellino's RICO liability was based upon extortion and bribery in connection with Avellino's trash-hauling companies. *Id.* at 810–11. Moreover, once liability is established, the trial court has broad discretion in fashioning relief, *see* 995 F.2d at 377, and is explicitly authorized to "order[ ] any person to divest himself of any interest, direct or indirect, in any enterprise." 18 U.S.C. § 1964(a); *see also United States v. Private Sanitation Indus. Ass'n,* 793 F.Supp. at 1150–52 (discussing divestiture and disgorgement as RICO remedies).

■ In deciding to deny Ferrante's motion for a stay, we have also considered the other factors pertinent to the issue whether to grant a stay. While Ferrante may well suffer irreparable harm from the divestiture of his companies, the interests of the government and the public in terminating the control of trash handling on Long Island by criminal conspirators weigh heavily against granting a stay. Because of the scope of the relief ordered against Ferrante, however, his

appeal will be heard on an expedited basis, and arrangements have been made by the parties with staff counsel regarding the details of that expedition. *See* order entered November 29, 1994.

HEANEY, Senior Circuit Judge, dissenting:

In my view, the quasi-criminal nature of the remedies sought by the government in this RICO action render summary judgment an inappropriate means by which to impose liability on Ferrante. I recognize, however, that this circuit has held to the contrary in *United States v. Private Sanitation Indus. Ass'n,* 995 F.2d 375 (2d Cir.1993) ("*Avellino*") I recognize that we are bound by that holding, but believe that this case can and should be distinguished from *Avellino.* While I fully accept the federal government's compelling interest in purging the Long Island private sanitation industry of organized crime, I also believe that Ferrante has met his burden of establishing a substantial possibility of success on appeal. *Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir. 1992). Consequently, I would concur in a stay designed both to preserve Ferrante's assets for possible future disgorgement and to delay the government from commencing disgorgement and disinvestment proceedings pending the resolution of Ferrante's appeal.

As to the appropriateness of summary judgment, I must emphasize at the outset that this is a close case. I can find little fault in the majority's identification and use of relevant case law. Nevertheless, the government's use of summary civil procedures to impose punitive sanctions for alleged criminal behavior represents a further erosion of citizens' protections in criminal proceedings, particularly in light of RICO's wide applicability outside the bounds of organized crime. My conviction that Ferrante need not be denied his day in court is reinforced by the fact that the prosecution would suffer no appreciable harm if it were required to sever Ferrante from his co-defendants and bring him individually to trial. The evident strength of the government's case against Ferrante cannot justify the circumvention of the judiciary's duty to put the government to its proofs: In a quasi-criminal RICO action, the government should be required to establish each element of liability before a trier of fact.

## I. THE QUASI-CRIMINAL NATURE OF THIS ACTION

The Supreme Court has prescribed a highly deferential test to determine when an apparently civil statutory penalty is, in fact, criminal:

> First, we . . . set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we . . . inquire[ ] further whether the statutory ·scheme was so punitive in purpose or effect as to negate that intention. . . .

*United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). Once determined to be criminal, actions to enforce such a statute must be accompanied by the full range of constitutional protections for criminal defendants, including the Fourth, Fifth, and Sixth Amendments. The test for quasi-criminality, however, is considerably less rigid and less deferential. A finding of quasi-criminality requires that only certain protections be imported from the criminal law in order to guarantee that due process is satisfied.

As set forth below, the touchstone of quasi-criminality is punishment.[1] Government-prosecuted civil RICO actions in which the remedies go beyond rough compensation must be considered quasi-criminal.[2] As the

---

1. It does not follow that the availability of punitive damages in a given civil action renders it quasi-criminal in nature. Although the line between tort and crime is ambiguous, it does nevertheless exist. Punitive damages obviously constitute punishment, but the underlying acts for which such awards are levied sound in tort, and not under the criminal law. It may safely be said that punitive damage awards punish and deter tortious behavior, while quasi-criminal civil remedies punish and deter criminal behavior.

2. I agree with *United States v. Cappetto,* 502 F.2d 1351, 1357 (7th Cir.1974), that a civil proceeding "is not rendered criminal in character by the fact that the acts also are punishable as crimes."

Supreme Court has noted, "the labels 'criminal' and 'civil' are not of paramount importance ... [for] [i]t is commonly understood that civil proceedings may advance punitive as well as remedial goals." *United States v. Halper,* 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). "[T]he Supreme Court has in recent years eschewed the rigid labels of 'civil' or 'criminal' when examining constitutional interests." *United States v. On Leong Chinese Merchants Ass'n Bldg.,* 918 F.2d 1289, 1299 (7th Cir.1990) (Cudahy, J., concurring). In *Halper,* the Court held that "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty...." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901. The *Halper* Court adopted the following test: "[A] civil sanction that cannot be fairly said to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.*

The Supreme Court has identified two types of proceedings as quasi-criminal: first, those actions in which a defendant faces loss of liberty or livelihood; second, those imposing a civil penalty arising from the commission of a criminal offense. *See* Elizabeth A. Fuerstman, *Trying (Quasi) Criminal Cases in Civil Courts: The Need for Constitutional Safeguards in Civil RICO Litigation,* 24 Colum.J.L. & Soc.Probs. 169 (1991). Put together, these decisions establish that the imposition of punishment for criminal activity segregates quasi-criminal from garden-variety civil causes of action. Both lines of cases fortify the conclusion that the present action is quasi-criminal.

The first line follows from *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), in which the Supreme Court held that due process protections apply to juvenile delinquency proceedings. The Court held that "[a] proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of liberty for years is comparable in seriousness to a felony prose-

cution." *Id.* at 36, 87 S.Ct. at 1448. Due process, the Court found, entitled the allegedly delinquent child to be notified of the charges against him and of his right to be represented by counsel; to assert the privilege against self-incrimination; and to confront and cross-examine witnesses. Similarly, in *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968), the Supreme Court held that because "[d]isbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer," the accused lawyer "is accordingly entitled to procedural due process...." The Court characterized disbarment actions as "adversary proceedings of a quasi-criminal nature." *Id.* at 551, 88 S.Ct. at 1226. The Second Circuit has expanded upon *Ruffalo,* explaining that "a court's disciplinary proceeding against a member of its bar is comparable to a criminal rather than to a civil proceeding." *Erdmann v. Stevens,* 458 F.2d 1205, 1209 (2d Cir.1972). Central to the reasoning in *Erdmann* was the court's acknowledgment that disbarment is punitive in nature: "[F]or most attorneys the license to practice law represents their livelihood, loss of which may be a greater punishment than a monetary fine." *Id.* at 1210.

In the case before us, it is clear that Ferrante faces the loss of his livelihood. The government seeks an order

enjoining Nicholas Ferrante: (1) from engaging in any activities involving or connected with the collection, transportation or disposal of solid waste ... (3) from participating in any of the affairs of any trade waste association, and from participating in any of the affairs of Local 813 or of any other union, and from participating in any way in the affairs of any of the Trust Funds of Local 813 or any other union, and (4) from associating with any other defendant or any member or associate of organized crime for any commercial purpose. In addition, it is requested that he be ordered to divest his interests in the named enterprises and to disgorge the proceeds derived from his unlawful con-

Rather, it is the actual punitive nature of the requested relief in a given case that will render a

civil RICO action quasi-criminal.

duct or from participation in the Enterprises into a Court-administered fund to be used for the Monitorship of the carting industry on Long Island ... in an amount to be determined after an inquest.

Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment as Against Nicholas Ferrante at 2–3. If required to divest his interests in Unique Sanitation Co. and U–Need–A–Roll–Off Corp. and to remain permanently out of the industry, Ferrante, like a disbarred attorney, will lose the only source of income he has known, at least part of which the government concedes may be legitimate. Moreover, Ferrante faces being branded as a "racketeer," just as the juvenile in *Gault* faced the label "delinquent." Thus, *Gault, Ruffalo,* and their progeny suggest that the relief sought by the government in this case renders the action quasi-criminal.

Beginning with *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the second line of cases isolates certain varieties of civil forfeitures as quasi-criminal. In *Boyd,* the Court held that "proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, although they may be civil in form, are in their nature criminal.... [S]uits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this quasi criminal nature." *Id.* at 633–34, 6 S.Ct. at 534. While the full implications of *Boyd* 's broad language have occasionally been foreclosed by the Supreme Court,[3] the Court has reaffirmed *Boyd* 's central holding that civil forfeiture is quasi-criminal in nature. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (holding Fourth Amendment exclusionary rule applies to civil forfeiture proceedings); *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (holding Fifth Amendment prohibition against self-incrimination applies to civil forfeiture proceedings); *Unit-*

*ed States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (holding Double Jeopardy Clause applies to civil forfeiture proceedings). "When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." *United States Coin & Currency,* 401 U.S. at 721, 91 S.Ct. at 1045.

In the case at hand, the government has requested relief closely analogous to civil forfeiture, including, among other things, divestiture, disgorgement, and a wide-ranging dissociation injunction. In my view, the RICO remedies sought by the government in this case go beyond the roughly compensatory. I recognize, however, that this view has not been adopted by the courts of this circuit in similar cases. Because I believe those decisions to rest on incomplete analyses, it may prove useful to set forth the basis for my disagreement.

In the limited context of the Fifth Amendment's applicability to RICO, several courts, including this one, have held that equitable remedies, such as divestiture, disgorgement, and injunction, are remedial, non-punitive, forms of relief. *See, e.g., United States v. Ianniello,* 824 F.2d 203, 208 (2nd Cir.1987); *United States v. Bonanno Organized Crime Family,* 683 F.Supp. 1411, 1450–51 (E.D.N.Y. 1988). First, these decisions employ only the *United States v. Ward* test of criminality, without considering whether RICO remedies sought in those cases were quasi-criminal. The Supreme Court has recently rejected similarly myopic approaches to civil forfeitures in *Austin v. United States,* —— U.S. ——, —— ——, 113 S.Ct. 2801, 2805–06, 125 L.Ed.2d 488 (1993). Holding that the Excessive Fines Clause may limit the amount of a civil forfeiture under 21 U.S.C. § 881, the Court stated that "the question is not, as the United States would have it, whether forfeiture ... is civil or criminal, but whether

---

**3.** "[T]his Court has declined, however, to give full scope to the reasoning and dicta in *Boyd....*" *United States v. Ward,* 448 U.S. 242, 253, 100 S.Ct. 2636, 2643, 65 L.Ed.2d 742 (1980). *See also Fisher v. United States,* 425 U.S.

391, 405–09, 96 S.Ct. 1569, 1578–80, 48 L.Ed.2d 39 (1976) (overruling *Boyd*'s extension of Fifth Amendment privileges to all private papers, but upholding its applicability to those containing incriminating testimony).

it is punishment." Id.[4] Thus, the Supreme Court has instructed that the resolution of questions turning on punishment ought not rely on the all-or-nothing criminality analysis of *Ward.* Second, the *Bonanno* and *Ianniello* analyses rely on *United States v. E.I. du Pont de Nemours & Co.,* 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961), which upheld disgorgement and divestiture as remedial relief under the antitrust statutes. I agree that disgorgement of ill-gotten gains constitutes a nonpunitive relief.[5] But as to divestiture, the analogies to antitrust are misplaced. As one commentator has noted, "[w]hile antitrust divestiture requires the dispossession of the specific interest that created the unlawful monopoly power, under [RICO] a defendant can be forced to divest himself of his entire interest in an enterprise because some investments stem from violations of RICO." Fuerstman, *supra,* at 187. Moreover, antitrust divestiture requires no predicate criminal offense, while civil RICO divestiture follows exclusively from the commission of criminal acts. In their sweeping reach, civil RICO's divestiture provisions parallel the civil forfeitures in *Boyd.* Rather than provide injured parties with rough compensation for the injuries caused by the defendant, civil RICO divestiture "forces the defendant to divest his entire interest in an enterprise so long as a portion of the funds invested in that enterprise was obtained in violation of RICO." *Id.* Thus, to the extent that a defendant is required to extract herself entirely from an enterprise, beyond the ascertainable reach of the racketeering taint, the court is in effect imposing a civil forfei-

ture.[6] Total divestiture eliminates the defendant's ability to maintain a future income derived from the legitimate, untainted, portion of the divested enterprise. The point is important because non-remedial forfeitures—uncompensated takings of property—clearly serve retributive goals.[7] Thus, in my view, civil RICO divestiture must be distinguished from antitrust divestiture on the basis of RICO's vastly wider scope, its failure to restrict available remedies to rough compensatory measures, and its predicate criminal offense requirement. Together, these features convert civil RICO divestiture into a punitive sanction.

In addition to divestiture and disgorgement, the government seeks to enjoin Ferrante from any involvement in any solid waste enterprise; from participating in the affairs of any union; and from associating with any of the other defendants for commercial purposes. While I have no quarrel with the necessity of such injunctions in the fight against organized crime, it simply cannot be denied that they are punitive measures. Dissociation orders and lifetime bans neither compensate victims nor prevent unjust enrichment. On the contrary, they serve to punish wrongdoers and deter others from similar courses of action. In sum, the relief sought by the government in this case goes beyond rough compensation to serve the goals of retribution and deterrence and therefore constitutes punishment. *See Halper,* 490 U.S. at 448, 109 S.Ct. at 1901 ("punishment serves the twin aims of deterrence and retribution"); *Kennedy v. Mendoza-*

---

4. The Court went on: "For this reason, the United States' reliance on *Kennedy v. Mendoza–Martinez* and *United States v. Ward* is misplaced.... The question in those cases was whether a nominally civil penalty should be reclassified as criminal and the safeguards that attend a criminal prosecution should be required. In addressing the separate question whether punishment is being imposed, the Court has not employed the tests articulated in *Mendoza–Martinez* and *Ward.* See, e.g., *United States v. Halper....*" *Austin,* ⸺ U.S. at ⸺, n. 6, 113 S.Ct. at 2806, n. 6 (citations omitted).

5. Of course, as the *Bonanno* court recognized, disgorgement is "dependent upon the government's ability to prove that the proceeds sought to be disgorged were 'ill-gotten' under the RICO

statute." 683 F.Supp. at 1449. "[T]he primary purpose of disgorgement is to prevent unjust enrichment regardless of whether any victims are entitled to damages." *Id.*

6. *Cf. United States v. Property at 4492 S. Livonia Road,* 889 F.2d 1258, 1270 (2d Cir.1989) ("At some point, it seems that a forfeiture would cross the line of condemning the instrumentality of crime and move into the area of punishing a defendant by depriving him of his estate.").

7. Recognizing as I do the impracticality of partial divestment in organized crime cases, I do not mean to suggest that total divestment should be disfavored out of sympathy for the defendant. Rather, by labeling RICO remedies punitive, I seek only to call a duck a duck.

*Martinez*, 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963) (deterrence and retribution are "traditional aims of punishment").

Thus, in light of *Boyd*'s still vital holding that "suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this quasi-criminal nature," I conclude that the action before us must be considered quasi-criminal. *Boyd*, 116 U.S. at 634, 6 S.Ct. at 534.

## II. THE CONSEQUENCE OF QUASI–CRIMINALITY

Because I believe this case to be quasi-criminal in nature, I believe that summary judgment was an inappropriate procedural mechanism by which to find Ferrante liable under RICO. More accurately, in the context of this motion for a stay, I believe that Ferrante has demonstrated a substantial possibility of success on appeal on the issue of summary judgment's propriety in a quasi-criminal action.

It must be conceded that several cases have been reported in which a defendant was found liable under RICO through the use of summary judgment. *See Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 276–77 (9th Cir.1988); *Crawford v. La Boucherie Bernard Ltd.*, 815 F.2d 117, 122 (D.C.Cir.1987); *Aetna Casualty & Surety Co. of Illinois v. Levy*, No. 83–C–3566, 1985 WL 2131 (N.E.Ill. July 24, 1985). However, none of these involved the federal government as a plaintiff. The only reported case in which the court upheld a grant of summary judgment in favor of the plaintiff in a government-prosecuted civil RICO action is *United States v. Private Sanitation Indus. Ass'n*, 995 F.2d 375 (2d Cir.1993) ("*Avellino*"). In that case, RICO liability was imposed on Salvatore Avellino, one of Ferrante's co-defendants, by means of summary judgment. The equitable remedies upheld against Avellino were virtually identical to those the government seeks to impose on Ferrante. *Id.* at

377–78. However, none of the cases granting or upholding a grant of summary judgment address the legal question of whether summary judgment ought to be available in a quasi-criminal—that is, punitive—action predicated on criminal behavior. Thus, while I recognize that we are bound by the result in *Avellino*, I must nevertheless express my disagreement with its premise of procedural regularity.

In my view, because a finding of liability constitutes a finding that the defendant has committed criminal acts, the conventional standards for summary judgment, *see Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), provide inadequate protection to civil RICO defendants. The prospect of punitive liability in a quasi-criminal action demands that the court afford the defendant something akin to a presumption of innocence.[8] Unless the defendant has made no attempt to refute the government's allegations, the government ought to be required to prove the defendant's liability at trial. The nature of quasi-criminal remedies requires that trial courts refrain from engaging in pre-trial weighing of evidence where the defendant has come forward with assertions which, if credited by the trier of fact, would absolve the defendant of liability. Thus, summary judgment might be appropriate in cases where *all* of the elements of civil RICO liability were either uncontested by the defendant or established by the preclusive effect of prior criminal convictions.

In the case before us, the availability of severance renders the government's use of summary judgment unnecessary. Fed. R.Crim.Proc. 14. Ferrante could easily be severed from his co-defendants and tried separately. Given the vast size of this case, little additional burden would be imposed by a requirement that the government prove the

---

8. The Second Circuit has held that the preponderance of the evidence standard applies to all elements of a civil RICO claim. *Cullen v. Margiotta*, 811 F.2d 698, 731 (2d Cir.1987). I note that despite strong dictum in *Sedima, S.P.R.L. v.*

*Imrex Co.*, 473 U.S. 479, 491, 105 S.Ct. 3275, 3282, 87 L.Ed.2d 346 (1985), suggesting the inappropriateness of more stringent standards, the Supreme Court has declined to decide the issue.

second predicate offense and enterprise elements before a trier of fact.

In sum, my belief that Ferrante has a substantial possibility of success on appeal begins with my conviction that summary judgment ought not be employed to impose quasi-criminal liability, except in cases entirely devoid of contested material facts.

### III.   THIS CASE MUST BE DISTINGUISHED FROM *AVELLINO*

Recognizing that we are bound by *Avellino*'s approval of the use of summary judgment in a similar case, I nevertheless believe that Ferrante has demonstrated a substantial possibility of success on appeal by pointing out a critical distinction between the two cases: In *Avellino,* both requisite predicate acts were established by the defendant's prior guilty pleas, while Ferrante was held liable on the basis of only one prior guilty plea. The second requisite predicate act was established by means of the affidavits of three former employees of the Oyster Bay weighing station.   In particular, the affidavit of Joseph Vittorio stated that Vittorio has personally accepted payments from Ferrante in exchange for the falsification of weight information.   The district court held that Vittorio's affidavit was uncontradicted because Ferrante failed to produce a counter-affidavit by an individual with personal knowledge. Because the Vittorio affidavit does not describe specific incidents of bribery, including dates, times, and locations, it is unclear whether any affidavits—other than an express.denial by Ferrante [9] or a detailed second-hand accounting of his every movement across the years of the alleged bribery—

could create a genuine issue of material fact in the eyes of the district court.

The affidavit of Joseph Ferrante, Nicholas Ferrante's son, presents a close call.   An executive of his father's corporations, Joseph Ferrante stated that he has worked with his father since the early 1970s and has "been with him virtually on a daily basis since that time."   Affirmation of Joseph Ferrante at 1. Viewing his affidavit in its entirety, it is clear that Joseph Ferrante could not have avoided personal knowledge of any pattern of bribery committed by his father in connection with Unique and U–Need, his carting companies, over a period of years.   In light of the quasi-criminal nature of this action, I believe that any doubts as to whether a genuine issue of material fact has been created must be resolved in favor of the defendant.   Thus, I believe that Joseph Ferrante's affidavit should have precluded summary judgment on the second predicate offense.

In addition, Joseph Ferrante's affidavit created a genuine issue of material fact as to a critical component of the enterprise element of RICO liability.   The district court relied, in part, upon the Declaration of Special Agent Donald McCormick in concluding that Nicholas Ferrante was involved in the illegal racketeering activities of the Luchese crime family.   Joseph Ferrante denies any relationship between his father and the Luchese organization.   Despite its recitation of McCormick's allegations, the district court apparently believed that to establish the enterprise element the government need only prove that Nicholas Ferrante owned and operated his two carting companies.   In my view, the government must show that Ferrante was involved in the enterprise of the Private Sanitation Industry Association.[10]

---

9. Ferrante has invoked his Fifth Amendment privilege against self-incrimination.   While it is clear that adverse inferences may be drawn from a defendant's refusal to provide evidence in civil RICO actions in which the government is a party, it is also true that "an adverse inference drawn from the assertion of the Fifth Amendment privilege in a civil proceeding may not be the sole basis for imposing liability upon a defendant."   *United States v. Bonanno Organized Crime Family,* 683 F.Supp. 1411, 1451–52 (E.D.N.Y.1988).   I agree with the district court

that the affidavits of the Oyster Bay employees constitute independent corroborative evidence sufficient to permit the drawing of an adverse inference in this case.

10.   I accept the district court's earlier determination in *United States Private Sanitation Indus. Ass'n,* 811 F.Supp. 808, 815 (E.D.N.Y.1992), that the Private Sanitation Industry Association constitutes an enterprise within the meaning of RICO.

Joseph Ferrante's affidavit constitutes a denial of such involvement by an individual with the necessary personal knowledge.

In sum, in light of the quasi-criminal nature of this action, Joseph Ferrante's affidavit must be considered to have created genuine issues of material fact as to the second predicate act and the enterprise element of civil RICO liability.

## IV. CONCLUSION

I believe that Nicholas Ferrante has demonstrated a substantial possibility of success on appeal and that none of the other three *Hirschfeld* factors counsel against the issuance of a stay to preserve the status quo pending the resolution of Ferrante's appeal.[11] Thus, a limited stay is necessary. I believe that a stay can be crafted which will adequately protect the rights and interests of all parties involved. I agree that (1) the assets of Ferrante and his companies should be frozen pending the resolution of his appeal, (2) he should be enjoined from transferring or encumbering any assets, (3) he should be enjoined from communicating with his carting businesses and co-defendants in any manner, and (4) his companies should be enjoined from engaging in any transactions outside the ordinary course of business. Additionally, in order to preserve the status quo, I would enjoin the government from commencing divestment and disgorgement proceedings pending the resolution of the appeal. Such a stay would adequately protect the government's interest if it prevails on appeal on the merits, and will correspondingly protect Ferrante's rights if he is successful on appeal.

---

11. I do not believe that any of the other three *Hirschfeld* factors weigh heavily either for or against a stay in this case. The public's interest in the immediate commencement of disgorgement and disinvestment proceedings against Ferrante shrinks in light of the fact that we have granted Ferrante an expedited appeal and that dozens of PSIA defendants remain untried. In my view, the public interest also includes the preservation of procedural fairness, even for defendants against whom the government has assembled a strong case.